01
02
03
04
05
06
07                      UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE

08  TIVO, INC.,                            )   Case No. C05-1393
                                           )
09          Plaintiff,                     )   ORDER GRANTING ECHOSTAR'S
                                           )   MOTION TO COMPEL
10      v.                                 )   PRODUCTION OF DOCUMENTS
                                           )   FROM THIRD PARTY DIGEO
11  ECHOSTAR COMMUNICATIONS                )
    CORPORATION, et al.,                   )   CASE PENDING IN E.D. OF TEXAS
12                                         )   Case No. 2-04cv01 DF
            Defendants.                    )
13  _____)

14          This case comes before the Court upon defendant EchoStar's[1] motion to compel non-

15  party Digeo, Inc. ("Digeo") to produce a license agreement ("License Agreement) between

16  Digeo and Adelphia in connection with a patent infringement case pending against EchoStar

17  in the Eastern District of Texas.

18          On January 15, 2004, TiVo, Inc. ("TiVo") filed an amended complaint in the Eastern

19  District of Texas against EchoStar which alleges that its digital video recording devices

20  infringe one of TiVo's patents (the "Texas Litigation").  Dkt. No. 1, Halpin Decl. at ¶¶ 6, 8.

21  Among other things, TiVo seeks damages of not less than a "reasonable royalty" for the

22  allegedly infringing device.  Halpin Decl. at ¶ 8, Amended Complaint.

23          On February 7, 2005, the Texas court issued a Protective Order in that case.  Halpin

24  Decl. at ¶ 9.  Among other things, the Order permits both parties and non-parties to produce

25
26  _____

            [1]Several defendants, including EchoStar Communications Corporation, EchoStar DBS
    Corporation, and EchoStar Technologies Corporation, have been named in this matter.  They
    are referred to collectively herein as "EchoStar."

01 documents under "confidential" and similar designations, which limit the disclosure of such

02 documents.  Halpin Decl., Stipulated Protective Order at ¶¶ 1, 2, 6, 25.  Further, the Order

03 provides that any documents produced with such a designation "shall be used by the parties to

04 this action solely in connection with actions between them . . . and not for any business,

05 patent prosecution, competitive, or governmental purpose or function, and such [documents]

06 shall not be disclosed to anyone except as provided herein."  Protective Order at ¶ 5.

07        Pursuant to the Texas Litigation, EchoStar served Digeo with a Federal Rule of Civil

08 Procedure Rule 45 subpoena *duces tecum*.  Dkt. No. 1, Halpin Decl. at ¶ 10.  The subpoena

09 sought, among other things, "[a]ll documents and things constituting, referring, or relating to

10 the licensing or negotiations to license . . . any service . . . or technology (whether or not

11 owned by TiVo) related to the recording or playback of time-delayed television viewing."

12 Halpin Decl., Digeo Subpoena, Document Request No. 1.  Digeo, however, refused to

13 produce its License Agreement with Adelphia.[2]  On July 28, 2005, EchoStar filed this motion

14 to compel Digeo to disclose the License Agreement.  Dkt. No. 1.

15        At the hearing for this matter, the parties confirmed that the only document now at

16 issue is an approximate sixty-page License Agreement between Digeo and Adelphia.

17 Although Adelphia did not seek to intervene in this matter or make an appearance at the

18 hearing, Digeo indicated that Adelphia will not consent to disclosure of the agreement.

19 Having carefully reviewed the parties' pleadings and supporting materials, and having

20 considered the parties' arguments at the hearing, the Court ORDERS as follows:

21        EchoStar's motion to compel production of the License Agreement from Digeo,

22 Dkt. No. 1, is GRANTED.  Rule 26(b)(1) permits discovery in civil actions of "any matter, not

23 privileged, that is relevant to the claim or defense of any party[.]"  Fed. R. Civ. P. 26(b)(1).

24 _____

25        [2]Initially, EchoStar's motion sought to compel disclosure of agreements from several
companies, including Adelphia, Bend Broadband, Comcast, and New Wave Communications.
26 However, while the motion was pending, all of the other parties but Adelphia agreed to allow
EchoStar to disclose the requested information.  Dkt. No. 8.  Because Comcast agreed to
provide its agreement, it has withdrawn its motion to intervene.  Additionally, EchoStar has
withdrawn its motion to the extent it applies to Comcast.  Dkt. Nos. 10, 11.

01  This rule is liberally interpreted to permit a wide range of discovery, even though some of that

02  information may not be admissible at trial.  *Id.*; *Schwarz v. TRW, Inc*, 211 F.R.D. 388, 392

03  (C.D. Cal. 2002) (internal citations omitted).

04      Rule 45 of the Federal Rules of Civil Procedure permits a party seeking production of

05  documents to move the court for an order to compel production.  Fed. R. Civ. P. 45(c)(2)(B).

06  Even when a subpoena seeks the disclosure of trade secrets or other confidential commercial

07  information, the court may require disclosure "if the party in whose behalf the subpoena is

08  issued shows a substantial need . . . that cannot be otherwise met without undue hardship and

09  assures that the person to whom the subpoena is addressed will be reasonably

10  compensated[.]"[3]  Fed. R. Civ. P. 45(c)(3)(B).  Non-party witnesses are subject to the same

11  scope of discovery under this rule as a party to whom a request is addressed under Rule 34.[4]

12  Advisory Committee Notes to 1991 Amendment; *McCoy v. Southwest Airlines, Inc.*, 211

13  F.R.D. 381, 384 & n.3 (C.D. Cal. 2002).

14      As the parties agreed at the hearing, the foregoing rules require the Court to balance

15  three factors when making a Rule 45 analysis.  First, the Court must consider whether the

16  License Agreement is relevant within the context of discovery.  Second, the Court must

17  determine whether, in light of its confidential nature, EchoStar has a substantial need for the

18  License Agreement.  Finally, the Court must weigh Digeo's burden of producing the License

19  Agreement.

20      A.   There is no dispute over the relevancy of the License Agreement.

21      There is no dispute over the potential relevancy of Digeo's License Agreement with

22  _____

23      [3]Confidential commercial information consists of information "which, if disclosed,
    could cause substantial economic harm to the competitive position of the entity from whom the
24  information was obtained."  *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D.
    Nev. 1994) (internal citations omitted).  The License Agreement sought here satisfies this
25  standard.

26      [4]Rule 34, which relates to the production of documents, provides that "[a] person not a
    party to the action may be compelled to produce documents and things or to submit to an
    inspection as provided in Rule 45."  Fed. R. Civ. P. 34(c).

01  Adelphia.  In patent cases, patent holders who prevail may be entitled to damages measured

02  by a "reasonable royalty."  35 U.S.C. § 284.  Typically, courts will calculate a "reasonable

03  royalty" by determinating what a willing licensor and licensee would pay for a license at the

04  time of the alleged infringement.  *See, e.g., State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883

05  F.2d 1573, 1580 (Fed. Cir. 1989).  Actual license agreements from the applicable industry are

06  a factor used in valuation in a hypothetical license agreement.  *See Georgia-Pacific Corp. v.*

07  *United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D. N.Y. 1970) *modified and aff'd*,

08  446 F.2d 295 (2d Cir. 1971) (discussing factors relevant to determining a reasonable royalty);

09  *Rite-Hite Corp v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995).  The License Agreement

10  thus plainly falls within the broad scope of Rule 26(b).

11         B.    <u>EchoStar has a substantial need for the License Agreement</u>.

12         The parties disagree as to whether EchoStar has a substantial need for the License

13  Agreement.  EchoStar argues that is has a substantial need for the documents because it needs

14  them to establish a "reasonable royalty" in the Texas Litigation.  Dkt. No. 1.  In its opposition

15  to the motion to compel, Digeo argues that EchoStar does not have a substantial need for the

16  documents because it has already obtained more than a dozen other agreements from other

17  licensees that will demonstrate the "reasonable royalty."  Dkt. No. 5.  It argues that the

18  Adelphia agreement is simply cumulative.  *Id*.

19         This is a close issue.  It appears that EchoStar's expert has already received thirteen

20  license agreements from various companies in response to the subpoena.  Moreover, it

21  appears that expert reports in the Texas Litigation were due on August 1, 2005, which might

22  make this request moot.

23         Nevertheless, on balance, the Court does find that a need for the License Agreement in

24  question has been established.  While license agreements by themselves are not dispositive of

25  the issue of what constitutes a "reasonable royalty," they are often the best evidence available.

26  This is not diminished by the fact that EchoStar's expert has other license agreements.

01         The Court asked for subsequent correspondence from the parties to make certain that

02   EchoStar's expert could make use of the License Agreement, if ordered produced.  EchoStar

03   and Digeo have both responded to the Court's request for further supplementation.  Because it

04   appears that EchoStar's expert can make use of the License Agreement, the request for its

05   production is not moot.  EchoStar has demonstrated a substantial need for the License

06   Agreement.

07         C.    <u>The burden of production does not outweigh EchoStar's need for the</u>

08                  <u>License Agreement</u>.

09         Digeo argues that producing the License Agreement imposes an unreasonable burden.

10   Dkt. No. 5.  The burden is not cost or time related.  Rather, Digeo argues that producing the

11   documents puts it in the "uncomfortable" position of having to breach an agreement with its

12   licensee.  *Id*.  It further argues that disclosing the License Agreement will provide EchoStar

13   with extremely valuable technical information regarding its products.

14         Digeo's concerns over confidentiality are well taken, but they do not render the

15   request unduly burdensome.  When the proponent of a subpoena seeks to discover a trade

16   secret or other confidential commercial information, trial courts typically enter a protective

17   order that restricts use and subsequent disclosure.  *See, e.g. Fed. Open Market Comm. of Fed.*

18   *Reserve Sys. v. Merrill*, 443 U.S. 340, 363 n.24 (1979) (internal citations omitted).  In

19   contrast, orders forbidding disclosure of confidential commercial information are rare.  *Id.*

20   The fact that businesses are ordinarily reluctant to disclose such information does not detract

21   from the effectiveness of protective orders and does not provide a sufficient basis on which to

22   deny a request for discovery of such information.  *See Truswal Sys. Corp. v. Hydro-Air*

23   *Engineering, Inc*., 813 F.2d 1207, 1211 (Fed. Cir. 1987).

24         There is a Protective Order in the Texas Litigation that applies to both parties and

25   non-parties to the underlying case.  Hence, it would apply to the License Agreement at issue

26   here.  Among other things, the Order provides that documents may be deemed "confidential"

      and, if so, "shall be used by the parties to this action solely in connection with actions

01 between them . . . and not for any business, patent prosecution, competitive, or governmental

02 purpose or function, and such [documents] shall not be disclosed to anyone except as

03 provided herein." Halpin Decl., Protective Order at ¶ 5. There is no evidence — nor any

04 suggestion by Digeo — that the Protective Order is inadequate to protect its interests in

05 confidentiality.

06       At the hearing, Digeo's counsel stated that Digeo was particularly concerned that

07 disclosing the License Agreement could provide EchoStar with access to extremely sensitive

08 technical information regarding its products. This concern is well taken. Since EchoStar's

09 purported need for the License Agreement arises out of its effort to establish a "reasonable

10 royalty," information relating to the technical specifications of its products and services

11 should not be subject to disclosure. These technical specifications would not be useful in an

12 expert report relating to calculation of a "reasonable royalty." Digeo, therefore, may redact

13 information not related to the monetary features of the License Agreement. Should the

14 parties be unable to agree on what information should be redacted, they may submit the

15 License Agreement to the Court for *in camera* review. The Court will then determine what

16 information should be redacted.

17       EchoStar's request for the License Agreement could place an "uncomfortable" strain

18 on Digeo's business relationship with Adelphia. However, Digeo's opposition to the request

19 should assure Adelphia of Digeo's commitment to protecting the confidential information that

20 might be contained in the License Agreement. Any lingering concerns should be alleviated

21 by redaction of appropriate portions of the documents and invoking the confidentiality order

22 approved in the Texas Litigation.

23       The Clerk is directed to send a copy of this Order to counsel for the parties.

24       DATED this 23d day of August, 2005.

25

26

                    *James P. Donohue*
                    JAMES P. DONOHUE
                    United States Magistrate Judge